ESTATE OF Vernon HEARN, Deceased; Chester Hearn, Individually, and as Co–Executor of the Estate of Vernon P. Hearn, and as Co–Trustee of the Hearn Family Trust; Roger Hearn, Gale Hearn Daniel, and Dale Hearn, Individually, and as Independent Co–Executor of the Estate of Vernon P. Hearn, and as Co–Trustee of the Hearn Family Trust, Appellants,

v.

Louise HEARN, Individually, and as Independent Co–Executor of the Estate of Vernon P. Hearn, Appellee.

No. 01–01–00499–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 27, 2003.

Christopher A. Prine, Sharon B. Gardner, Crain, Caton & James, P.C., Roger L. Beebe, Vinson & Elkins, LLP, Houston, for Appellant.

Alvin L. Zimmerman, Zimmerman, Axelrad, Meyer & Wise, P.C., John L. Hopwood, S. Shawn Stephens, Gina Dawn Patterson, Locke, Liddell & Sapp, L.L.P., Catherine B. Smith, Sarah A. Duckers, Vinson & Elkins, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION

SHERRY RADACK, Chief Justice.

This case involves the issue of contractual wills. Specifically, we must decide whether wills executed simultaneously by

the testator and his wife contain mutual contractual agreements to fund a family trust with the property of both spouses upon the death of the first spouse. Because we hold that there were no such contractual agreements, we affirm the trial court's judgment.

## BACKGROUND

### 1. The Family

Vernon Hearn died on November 4, 1998. He was survived by Louise Hearn, his wife of 42 years, and four children from a previous marriage-Chester, Roger, Gale, and Dale (the Children).

### 2. The Creation of the Wills and the Trust

In 1993, Vernon and Louise created the Hearn Management Trust,[1] a revocable trust for their benefit during their lives, which contained provisions relating to the disposition of trust assets upon the death of both spouses. Upon the death of the first spouse, the trust became irrevocable. The trust was funded with the nominal amount of 10 dollars, and no other assets were ever transferred to the trust during Vernon's lifetime.

At the same time the Trust was created, the Hearns executed nearly identical wills. Generally, the wills provide for the disposition of the testator's personal and household effects to the surviving spouse, with the residuary estate going to the Trust.

### 3. The Litigation

It is undisputed by the parties that the trust will be funded by Vernon's property, both community and separate. However, the Children filed a declaratory judgment action against Louise, alleging that she and Vernon had executed contractual wills that required her, upon Vernon's death, to fund the trust with not only Vernon's property, but also with her property. In effect, the Children argued that Louise's will also became effective when Vernon died.

The Children filed a motion for summary judgment asking the court to declare that Vernon and Louise had contractual wills, which required Louise to fund the trust, upon Vernon's death, with both Vernon's and Louise's property. Louise filed a motion for summary judgment asking the court to declare that she was under no contractual obligation to fund the trust with her property. The trial court granted Louise's motion, denied the Children's motion, and then severed the claims in these motions from others still pending in the case. This appeal followed.

## STANDARD OF REVIEW

We follow the usual standards of review for an order granting one party's summary judgment motion, and denying other parties' summary judgment motions, under rule 166a(a), (b), or (I). *See* TEX.R. CIV. P. 166a(a), (b), (I); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (summary judgment order not specifying grounds); *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999) (order granting and denying cross-motions for summary judgment); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997) (standard of review and burden under rule 166a(a), (b)); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (standard of review and burden under rule 166a(I)).

## CONTRACTUAL WILLS

### 1. Admissibility of Extrinsic Evidence

Before we construe Vernon's will to determine whether there was a contractual

---

1. The Trust actually consists of at least three separate trusts referred to as (1) the family trust, (2) the exemption trust, and (3) the marital trust.

agreement, we must first decide whether we should consider extrinsic evidence, or whether our review is limited to the terms of the will itself.

Section 59A of the Texas Probate Code provides as follows:

> a. *A contract* to make a will or devise, or not to revoke a will or devise, if executed or entered into on or after September 1, 1979, *can be established only by provisions of a will* stating that a contract does exist and stating the material provisions of the contract.
>
> b. The execution of a joint will or reciprocal wills does not by itself suffice as evidence of the existence of a contract.

TEX. PROB.CODE ANN. § 59A (Vernon 1980) (emphasis added).

■ We must construe statutes as written and, if possible, ascertain intent from the statutory language. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex.2002). We may also consider other factors, including the object the statute seeks to obtain, legislative history, and the consequences of a particular construction. *Id.*

We believe that the intent of section 59A is clear—a contractual will can only be established "by provisions of a will." Therefore, we will not consider any extrinsic evidence in determining whether a contractual will exists in this case.[2]

**2. Our** conclusion is supported by the legislative history of section 59A. The original bill specifically permitted the admission of extrinsic evidence. *See H.B. 329–9 § 8, First Printing, Original Bill File, Sixty-sixth Legislative Session* (Texas Legislative Reference Library 1979). The statute, as enacted, contains no such provision. *See* TEX. PROB.CODE ANN. § 59A.

**3.** We note that, in this rather unusual case, we are not called upon to interpret the terms

## 2. The Will

Having decided that extrinsic evidence is not permissible to establish a contractual will, we turn to the terms of the will itself.[3] In the section of Louise's will entitled "Tax Elections," the will contains the following provision:

> In paragraph D–5 of the Trust Agreement, my husband [and in the case of Vernon's will, "my wife"] and I have contracted that we each will execute and maintain in force a will which directs our respective executors to make a marital deduction election under certain circumstances. In accordance with such agreement, and to evidence and perfect the same in accordance with Section 59A of the Texas Probate Code, I hereby direct that if I am the "first deceased trustor" within the meaning of the Trust Agreement, my executor shall elect in full Section 2056(b)(7) of the Internal Revenue Code to have all property passing to the Marital Trust established under Section D of the Trust Agreement treated as qualified terminable interest property for federal estate tax marital deduction purposes.

The Children contend that this clause establishes a contract regarding succession that requires Louise to place her portion of the community property in the trust along with Vernon's portion, which passed to the trust upon his death.

We agree with the Children that this clause meets the requirements of section

of the decedent's, i.e., Vernon's, will. Instead, the Children argue that *Louise's* will became *effective* upon Vernon's death. Thus, the gist of the Children's claim is that Louise's will required her to place all of *her own property*, which she received as a result of Vernon's death, into the trust even before she died. As stated earlier, it is undisputed that Vernon's property would be used to fund the trust.

59A by (1) stating in the will(s) that Vernon and Louise have entered into a contract and (2) providing the material terms of that contract. However, we disagree with the Children over the material terms of the contract.

■ Nothing in either will suggests that Louise's will would become effective on the date of Vernon's death. Instead, the will provides that both spouses will maintain *a will* that directs his/her executor to elect a marital deduction for federal estate tax purposes for any property passing into the trust upon his/her death. The will does not require that *this* will be maintained, and nowhere does it require Louise to put her property in the trust before her death. Clearly, the sole purpose of the contract was to assure that any property passing to the trust upon the death of the "first deceased trustor" would qualify for a federal income tax marital deduction.[4]

In this case, Vernon was the "first deceased trustor" and his will, according to the terms of the contract, required his executor to make a marital deduction election for all property passing to the marital trust result as a result of his death. This contract between Vernon and Louise was completed when Vernon died and his residuary estate, including his portion of the community property, passed to the marital trust and his executor made a marital deduction election.

### 3. The Trust

■ Even if we were to consider the provisions of the Trust Agreement, we would still conclude that there was no agreement for Louise to fund the trust with her property upon Vernon's death. The relevant trust provisions provide:

It is the intention of both trustors that the property distributed to this trust upon the death of the first deceased trustor shall qualify for the marital deduction allowed by the federal estate tax law applicable to the first deceased trustor's estate. All questions applicable to that gift and to this trust shall be resolved accordingly. No powers or discretion of the trustee with respect to this trust shall be exercised or exercisable except in a manner consistent with this intent.

Each trustor hereby contracts with the other that he or she will execute and maintain in force at all times following the execution of this trust agreement a will directing his or her executor (*if he or she is the first deceased trustor*) to elect in full under Section 2056(b)(7) of the Code to have all property passing to the Marital Trust hereunder treated as "qualified terminable interest in property" for federal estate tax marital deduction purposes.

This language, like the language in the wills, indicates only that Louise and Vernon intended to created a QTIP trust, which would qualify for a marital deduction, upon the death of the first spouse. There is nothing in this language that suggests that Vernon and Louise had contracted to fund the trust with the surviving

---

4. Under section 2056(b)(7) of the Internal Revenue Code, property passing to a trust after a spouse's death, in which the surviving spouse has a life estate, may qualify for a marital deduction if, among other requirements, the executor of the deceased spouse makes a marital deduction election. *See* 26 U.S.C. § 2056(b)(7). This is commonly referred to as a QTIP trust. By qualifying the trust property for the marital deduction, the testator is assured that the property is not taxed both when it passes to the trust and again upon the surviving spouse's death and the termination of her life estate in the corpus of the trust.

spouse's property upon the death of the first spouse.

The trust agreement describes the assets of the trust as (1) the $10 originally used to fund the trust and (2) "all other properties, real or personal, which any person *may* at any time and in any manner add or cause to be added to the trust estate." The trust agreement then characterizes the property in the trust by stating,

"As long as both trustors have an interest in the Hearn Management Trust, all property held in the trust estate of the Hearn Management Trust shall have the same character for marital property purposes as it would have had if the Hearn Management Trust had never been created, and the character of any such property withdrawn by or distributed to a trustor for the trust shall continue in the hands of the recipient." (Emphasis added).

The agreement then defines the trustors' "interest in the trust estate" as "all property *in the trust estate* which, but for this trust agreement, would be owned by that trustor (or his or her estate) as separate property or his or her one-half of the community property." (Emphasis added).

While this language contemplates that community or separate property *may* be placed in the trust, and that the characterization of such property would continue even after being placed in the trust, it does not *compel* the funding of the trust by either Vernon or Louise.

The only language that we can find that compels the funding of the Trust is the devise in Vernon's will. As Louise is not yet deceased, the devise to the trust found in her will is not yet effective, nor is it irrevocable. *See Meyer v. Shelley,* 34 S.W.3d 619, 623 (Tex.App.-Amarillo 2000, no pet.) (holding breach of contractual agreement to make a certain devise not ripe until testator dies).

Therefore, we hold the trial court correctly ruled that, as a matter of law, Louise did not contractually agree to fund the trust with her own property at the time of Vernon's death.

## REFORMATION

■ The Children argue that if we determine there was no contractual agreement for Louise to fund the trust upon Vernon's death, we should reform the trust agreement to reflect Vernon's intent in creating the trust.

■ The underlying objective of reformation is to correct a mutual mistake made in *preparing* a written instrument, so that the instrument truly reflects the *original* agreement of the parties. *Cherokee Water Co. v. Forderhause,* 741 S.W.2d 377, 379 (Tex.1987). By implication, then, reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing. *Id.*

Louise contends that there is no evidence of either element. Specifically, Louise contends that there is no evidence that she ever agreed to place her property in the trust upon Vernon's death. She testified that she never discussed the estate plan with Vernon and she never met Mr. Jukes, the attorney who drafted the will and trust agreement.

In contrast, the Children point to a letter from Mr. Jukes to both Vernon and Louise, which, they argue, implies that both Vernon and Louise agreed to place their property in the trust upon the death of the first spouse. The Jukes letter provides in pertinent part:

*The wills* for each of you do not add much to the estate plan-instead they *add each person's estate* to the trust, and the

trust will be the document which governs where it goes.

\* \* \* \*

With the exceptions mentioned above, your estate plan will provide that when one of you has died, survived by the other, *the entire estate will be left in trust for the benefit of the surviving spouse.*

\* \* \* \*

In going over these documents and preparing any questions that you would like to ask me about them, there are several things that I would like both of you to bear in mind. The first is that, as I understand you both have agreed, this is a "joint" estate plan. What that means is that both of you are committing to put this plan in force, and once these documents are signed, the plan can not be changed without both of you agreeing to the change. As a consequence of that, the Plan can not be changed at all following the death of one of you. Each of you receives substantial benefits from the other's portion of the estate under this plan, but is also giving up something in terms of the ability to make changes on your part later. (Emphasis added).

■ We do not agree that this letter raises a fact question about whether Louise and Vernon agreed to fund the trust with both their property after Vernon's death. The first sentence in the letter above states that the wills add each spouse's estate to the trust. This does not, however, imply that each spouse's property passes, as a whole, to the trust, upon the death of the first spouse. Each spouse's will transfers his or her own property. Wills, by their very nature, are only

effective upon death, and only cause a transfer of property upon death. *See Shriner's Hosp. v. Stahl,* 610 S.W.2d 147, 150 (Tex.1980) (holding that "[a] will speaks at the time of the testator's death, and it is the estate he then possessed that passes according to the terms of that will.") (citing *Haley v. Gatewood,* 74 Tex. 281, 12 S.W. 25, 26 (1889)); *see also Meyer,* 34 S.W.3d at 623 (holding that even existence of a contractual will regarding the ultimate disposition of one's property does not prevent spouse from transferring property inter vivos).

The Jukes letter also states that, when one of the spouses dies, the *entire estate* will be left in trust for the benefit of the surviving spouse. The term "entire estate" refers to Vernon's estate. As Louise is not yet deceased, she has no "estate" to pass to the trust.

Therefore, we conclude that the Jukes letter is not evidence of an agreement between Louise and Vernon to fund the trust with both of their property upon the death of the first spouse. There being no evidence of an original agreement between Vernon and Louise, there is nothing for the Court to reform.[5]

That the trust became irrevocable upon Vernon's death means that property already in the trust (or placed there as a result of his death) could be disposed of only according to the terms of the trust agreement. Again, nothing in the Jukes letter suggests that Louise had an obligation to place her property in the trust before her death.

Accordingly, the trial court did not err in rendering summary judgment in favor

---

5. Because we find no agreement subject to reformation, we need not address the issue of whether a unilateral mistake is sufficient to support reformation of an inter vivos trust. Accordingly, we express no opinion as to whether or not this Court agrees with the language found in *Brinker v. Wobaco Trust, Ltd.,* 610 S.W.2d 160, 164 (Tex.Civ.App.-Texarkana 1980, writ ref'd n.r.e.).

of Louise on the Children's claim for reformation.

## CONCLUSION

We affirm the judgment of the trial court.