Larry **MEYER**, Petitioner,

v.

John **CATHEY**, Respondent.

No. 03–0938.

Supreme Court of Texas.

June 24, 2005.

---

**3.** At worst, there was some evidence that some customers lost service for about three hours.

Corbet F. Bryant Jr., Monica Wiseman Latin, Jeffrey S. Levinger, Carrington Coleman Sloman & Blumenthal, L.L.P., Dallas, for petitioner.

James E. Wren, Dale D. Williams, Williams Squires & Wren, L.L.P., Greg White, Naman, Howell, Smith & Lee LLP, Waco, Gary L. Richardson, Richardson, Stoops, Richardson & Ward, Tulsa, John H. McElhaney, Locke Purnell Rain & Harrell, Dallas, for respondent.

PER CURIAM.

This case involves allegations of fraud and breach of fiduciary duty between business associates. John Cathey ("Cathey") sued Larry Meyer ("Meyer") alleging that Meyer failed to pay him amounts promised for his work on various real estate development projects. The trial court entered a take-nothing judgment in Meyer's favor and granted his posttrial motion for discovery sanctions. A divided court of appeals reversed in part, affirmed in part, rendered in part, and remanded in part. 115 S.W.3d 644, 673. Because we conclude that there is legally insufficient evidence that Meyer owed a fiduciary duty to Cathey and that there is sufficient evidence to support Meyer's ratification defense to Cathey's fraud claims, we reverse the court of appeals' judgment in part and render judgment that Cathey take nothing on those claims. Furthermore, because we agree that Meyer waived his right to recover discovery abuse sanctions, we affirm the court of appeals' judgment ordering that Meyer take nothing on his motion for sanctions.

In 1997, Cathey sued Meyer for fraud and breach of fiduciary duty arising out of their collaboration on eight real estate development projects. Over the approximately four-year course of their business arrangement, Meyer and Cathey periodically disagreed over Cathey's financial interests in the projects. According to Cathey, near the beginning of their relationship, Meyer orally promised to pay him, in addition to a $50,000 base salary, twenty percent of the net profits for projects Cathey found, ten percent of the net profits for projects he worked on but did not find, and a $25,000 bonus for refinancing loans on a previously owned property. Cathey claims that this oral "global agreement," as well as subsequent oral promises, were not fully honored. He asserts that Meyer would either refuse to put in writing the oral agreement that they reached on a particular project, or present Cathey with a written agreement differing from what had been agreed. In addition, Cathey contends that Meyer secretly paid himself large consulting fees, thereby draining the profits from certain projects.

After a six-week trial, the jury found that Meyer fraudulently induced Cathey to participate in all of the projects, but also that Cathey ratified and waived each incident of fraud. The jury also found that Meyer breached a fiduciary duty owed Cathey regarding two of the projects, but that Cathey knew or should have known of the breach on or before May 22, 1995—two years before he filed this suit and, according to Meyer, after the applicable statute of limitations had expired.[1] The trial court

---

1. Cathey filed this suit on May 22, 1997. If a two-year limitations period applied, then the jury's finding would bar Cathey's breach of fiduciary duty claim. The parties, however,

rendered a take-nothing verdict in Meyer's favor. Several weeks later, Meyer filed a motion for discovery abuse sanctions, which the trial court granted.

A divided court of appeals reversed in part, holding that Cathey was entitled to recover on his fraud and breach of fiduciary duty claims with respect to all but one of the eight projects.[2] 115 S.W.3d at 673. The court of appeals also reversed the sanctions award. *Id.* Both parties have petitioned this Court for review, alleging numerous points of error. For the reasons explained below, we reverse the court of appeals' judgment in part, affirm it in part, and render judgment that Cathey take nothing on his fraud and breach of fiduciary duty claims and that Meyer take nothing on his motion for sanctions.

First, we address Meyer's claim that there is legally insufficient evidence to support the jury's finding that Meyer owed Cathey a fiduciary duty with respect to their final two projects: a movie theater complex in Waco and a condominium development in Dallas. The court of appeals found "more than a mere scintilla of evidence that a fiduciary relationship existed":

> Prior to the Dallas and Waco projects, Cathey and Meyer worked together on other projects for three years. Cathey had a five percent partnership interest in one of the [prior] apartment complex projects, and he co-signed a security agreement for a loan used to finance [that project]. The parties do not dispute that Meyer was always in charge of all aspects of the projects and made the final decisions. Meyer controlled the financing and the books, and Cathey relied on and trusted Meyer to treat him fairly and keep accurate financial records. Meyer told Cathey the two of them would "make millions" together. Cathey considered Meyer a friend; he testified they ate lunch together every day for four years.... The evidence is legally sufficient to support the jury's finding that "Cathey justifiably placed trust and confidence in Meyer to act in Cathey's best interest."

115 S.W.3d at 669–70 (citation and footnote omitted). We disagree that these facts establish a fiduciary relationship.

It is well settled that "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176–177 (Tex.1997) (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 225–26 (Tex.2002)). " 'Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court.' " *Nat'l Med. Enters. v. Godbey,* 924 S.W.2d 123, 147 (Tex.1996) (quoting *Lacy v. Ticor Title Ins. Co.,* 794 S.W.2d 781, 787 (Tex.App.-Dallas 1990), *writ denied per curiam,* 803 S.W.2d 265 (Tex.1991)). In certain formal relationships, such as an attorney-client or trustee relationship, a fiduciary duty arises as a matter of law. *Johnson v. Brewer &*

---

dispute whether the proper limitations period is two or four years. Because we decide this claim on separate grounds, we do not reach this issue.

**2.** The court of appeals affirmed the take-nothing judgment on all claims relating to one project, for which it found that there was no evidence of actual damages. 115 S.W.3d at 667, 673. The court also remanded for a new trial all claims relating to a second project, for which it was unable to determine the appropriate damage award. *Id.*

*Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002); *see also Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex.1998). We also recognize an informal fiduciary duty that arises from "a moral, social, domestic or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998); *see also Schlumberger Tech. Corp.*, 959 S.W.2d at 176. However, "[i]n order to give full force to contracts, we do not create such a relationship lightly." *Schlumberger Tech. Corp.*, 959 S.W.2d at 177. "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp.*, 964 S.W.2d at 288.

■ Here, there is no evidence of such a preexisting relationship between Meyer and Cathey. The court of appeals' reliance on Meyer's and Cathey's work on prior projects is misplaced. *See* 115 S.W.3d at 669. These earlier projects were arms-length transactions entered into for the parties' mutual benefit, and thus do not establish a basis for a fiduciary relationship. *See Associated Indem. Corp.*, 964 S.W.2d at 288 (holding that preexisting indemnity agreement between surety and contractor "was an arms-length transaction entered into for the parties' mutual benefit" and thus did not "justify[ ] a special relationship of trust and confidence"). In fact, the agreements governing the earlier projects expressly disavowed the creation of any fiduciary duties or other special relationships.

Furthermore, the fact that Cathey trusted Meyer does not transform their business arrangement into a fiduciary relationship. *See Morris*, 981 S.W.2d at 674 (" '[M]ere subjective trust does not … transform arm's-length dealing into a fidu-

ciary relationship.' " (quoting *Schlumberger Tech. Corp.*, 959 S.W.2d at 177)). Nor can we justify imposing a fiduciary duty based on the fact that, for four years, Cathey and Meyer were friends and frequent dining partners. *See Crim Truck & Tractor Co.*, 823 S.W.2d at 595 ("[T]he fact that the relationship has been a cordial one, of long duration, [is not] evidence of a confidential relationship."). In sum, there is insufficient evidence that Meyer owed Cathey a fiduciary duty. Accordingly, Cathey cannot recover on his breach of fiduciary duty claims.

■ Next we address whether there was sufficient evidence to support the jury's ratification finding. The jury found that Meyer fraudulently induced Cathey's participation in every project, but that Cathey ratified the fraud. The court of appeals held that the ratification evidence was legally insufficient. 115 S.W.3d at 661. Again, we disagree.

In *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 680 (Tex.2000), we held that a party who does not have a continuing obligation to perform under a contract, but nevertheless continues to perform after learning of a fraud, ratifies the fraud and therefore cannot recover damages for the period of time when the party knew of the fraud. Here, the court of appeals concluded that the ratification evidence relating to certain projects was insufficient because there was no evidence that, at the time he was providing services to Meyer, Cathey knew of Meyer's intent to diminish profits through self-paid consultation fees. 115 S.W.3d at 660. But Cathey's fraud claim was not limited to the consultation fee allegations; Cathey also alleged that Meyer fraudulently induced Cathey's participation in all of the projects by misrepresenting (in their global agreement) the compensation that Cathey was to receive for his work. Once the jury

determined that Meyer fraudulently induced Cathey, it was asked if "Cathey ratified the conduct of Meyer, if any, that [it] found constituted fraud." Because the ratification question was submitted broad form, we do not know what conduct the jury found to constitute fraud. We must therefore consider whether there is sufficient evidence to support ratification under any fraud scenario presented to the jury. *See Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex.2003) ("In conducting a legal sufficiency review, we must view the evidence in a light that tends to support the disputed finding . . . .").

We conclude that there is sufficient evidence that Cathey ratified the fraud concerning the alleged compensation misrepresentations. The evidence shows that during their first project, Cathey agreed in writing to a compensation arrangement differing from the compensation terms that allegedly existed under the global agreement. Although Cathey was aware of this discrepancy, he continued to work with Meyer despite being under no obligation to do so. Thus, under our holding in *Fortune Production Co.,* Cathey ratified any fraud arising from misrepresentations allegedly made in the global agreement.

*See* 52 S.W.3d at 680. Accordingly, Cathey cannot recover on his fraud claims.

■ Finally, we consider Cathey's contention that the trial court abused its discretion by awarding discovery abuse sanctions. Prior to their business arrangement, Cathey gave Meyer a résumé, which Cathey now admits misrepresented his work experience and education. However, during his pretrial deposition, and in his responses to Meyer's request for admissions, Cathey maintained that the résumé's content was accurate. Thereafter, Meyer sought out and deposed several individuals whose testimony contradicted the assertions made in Cathey's résumé. At trial, Cathey admitted not only that his résumé contained numerous inaccuracies, but also that he lied when questioned about the résumé during his deposition. Several weeks after the trial court rendered its final judgment, Meyer moved for sanctions pursuant to Texas Rules of Civil Procedure 215.3 [3] and 215.4(b),[4] seeking reimbursement for the expenses incurred by way of his investigation into Cathey's résumé. The trial court granted the motion and awarded $25,978.73 as sanctions. Cathey con-

---

**3.** Rule 215.3 states:

If the court finds a party is abusing the discovery process in seeking, making or resisting discovery or if the court finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, or that a response or answer is unreasonably frivolous or made for purposes of delay, then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of Rule 215.2(b). Such order of sanction shall be subject to review on appeal from the final judgment.

Tex.R. Civ. P. 215.3.

**4.** Rule 215.4(b) states:

*Expenses on Failure to Admit.* If a party fails to admit the genuineness of any docu-

ment or the truth of any matter as requested under Rule 198 and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 193, or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had a reasonable ground to believe that he might prevail on the matter, or (4) there was other good reason for the failure to admit.

Tex.R. Civ. P. 215.4(b) (footnote omitted).

tends that this award was an abuse of discretion because, by waiting until after trial to file his motion, Meyer waived his sanctions claim. We agree that Meyer waived any entitlement to sanctions.

In *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex.1993), we explained the circumstances in which, by failing to obtain a pretrial ruling on a discovery dispute, a party waives his or her claim for discovery abuse sanctions. In that case, the trial court issued a postverdict order awarding death penalty sanctions against Remington, which was based in part on pretrial discovery abuse. *Id.* at 169–70. Addressing Remington's request for mandamus relief, we stated:

> Remington contends that no trial court may impose discovery sanctions posttrial for pretrial discovery abuse. We cannot agree. Such a rule would absolutely bar imposition of sanctions for discovery abuse revealed for the first time during or after the trial. We do, however, agree that the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct. Here, of the twelve incidents of misconduct cited in the sanctions order, nine concern pretrial conduct of which Craig was aware before trial. We hold that Craig waived any objections to these matters by failing to request a pretrial hearing on the alleged discovery abuse and by requesting a preferential trial setting.
>
> On the other hand, if pretrial discovery abuse is not revealed until after the trial has begun, or even after trial, a party cannot be said to have waived a claim for sanctions.

*Id.* at 170 (citations and footnote omitted).

The court of appeals held that Meyer had a reasonable evidentiary basis for bringing a pretrial motion. 115 S.W.3d at 673. Meyer contends, however, that until Cathey admitted at trial to lying in his discovery responses, he (Meyer) did not have "conclusive evidence" upon which to bring a motion for sanctions. Under our decision in *Remington Arms Co.*, waiver bars a trial court from awarding posttrial sanctions based on pretrial conduct of which a party "was aware" before trial; lack of "conclusive evidence" is not an excuse. *See Remington Arms Co.*, 850 S.W.2d at 170. Here, Meyer was clearly aware of Cathey's discovery misconduct before trial: he obtained pretrial deposition testimony that directly contradicted Cathey's deposition testimony and other discovery responses. Accordingly, by not objecting prior to trial, Meyer waived his sanctions claim.

In sum, we conclude that: (1) Meyer did not owe Cathey a fiduciary duty; (2) there is sufficient evidence to support the jury's ratification finding; and (3) Meyer waived his claim for discovery abuse sanctions. For these reasons, without hearing oral argument, we grant the petition for review, and we reverse the court of appeals' judgment in part and affirm it in part. Tex.R.App. P. 59.1, 60.2(a), (c). We render judgment that Cathey take nothing on his fraud and breach of fiduciary duty claims and that Meyer take nothing on his motion for sanctions. *Id.* 60.2(c).