Appellees= Motions for Rehearing and for En Banc are Overruled; Affirmed
as Modified in part, Reversed and Remanded in Part, and Substitute Opinion
filed January 10, 2008








Appellees= Motions for Rehearing and for En Banc are Overruled;
Affirmed as Modified in part, Reversed and Remanded in Part, and Substitute
Opinion filed January 10, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00215-CV

_______________

 

TEX STAR MOTORS, INC., Appellant

 

V.

 

REGAL FINANCE COMPANY, LTD. and

REGAL FINANCE COMPANY II, LTD., Appellees

                                                      
                                                                                         

On Appeal from the 61st District Court

Harris County, Texas

Trial Court Cause No. 2002-41615

                                                                                                                                               


 

S U B S T I T U T E   O P I N I O N

 

Appellees= motions for rehearing and for en
banc reconsideration are overruled, the opinion issued in this case on July 19,
2007 is withdrawn, and the following opinion is issued in its place.








In this breach of contract dispute,
Tex Star Motors, Inc. (ATex Star@) appeals a judgment entered in favor of Regal Finance
Company, Ltd. and Regal Finance Company II, Ltd. (collectively, ARegal@) on the grounds that: (1) the trial
court erred in failing to award Tex Star recovery in accordance with the
portions of the jury=s verdict decided in its favor; (2) the charge submitted to
the jury was defective in numerous respects; (3) the evidence was legally and
factually insufficient to support the jury=s findings in favor of Regal; (4) the
trial court erred in making a joint award of attorney=s fees to Regal and in awarding
attorney=s fees without evidence of
segregation between claims, defenses, and parties; and (5) the trial court
improperly awarded prejudgment interest for a period before Regal=s loss accrued.  We affirm as
modified in part, and reverse and remand in part.

Background

Beginning in 1996, Tex Star, a used
vehicle dealer, and Regal, an investment partnership, entered into two Retail
Installment Contract Purchase and Sales Agreements (the APSAs@), under which Regal had the right to
purchase all of the secured automobile installment loan notes (the Anotes@) that Tex Star received in sales
transactions with its customers.  The PSAs provided for a Aholdback reserve@ fund in which Regal would retain
$750 of the price of each note it purchased to reimburse it for: (1)
deficiencies, collateral repossession expenses, and other debts owed to Regal
by Tex Star; and (2) a specified amount (the Arepurchase reduction@) in the event Regal elected to have
Tex Star repurchase a defaulted note pursuant to its full recourse guaranty of
the notes under the PSAs.  The PSAs further provided that, in the event of such
a repurchase, Tex Star=s repurchase price would be correspondingly reduced by the
amount of the repurchase reduction Regal was entitled to withdraw from the
holdback reserve fund.  In practice, however, Tex Star did not deduct this
amount from its payments for repurchased notes, but instead periodically
withdrew the aggregate amount of repurchase reductions from the holdback
reserve.








In 1999, Regal secured a $25,000,000
line of credit from Bank One that it used to purchase the notes.  Among other
things, the Bank One loan agreement required Regal to maintain a reserve fund
(the ABank One reserve@) equal to five percent of the
outstanding Bank One loan principal.  From 1999 to 2002, Tex Star deposited
$975,000 into the Bank One reserve.

Regal stopped purchasing notes from
Tex Star in July of 2002, shortly before the Bank One line of credit was to
end.  Soon after that, Tex Star declined to deposit further funds into the Bank
One reserve.  Although Tex Star continued repurchasing defaulted notes from
Regal until November of that year, Regal ceased paying Tex Star the aggregate
amounts of repurchase reductions from the holdback reserve; and, after the Bank
One line of credit was repaid and discontinued, Regal did not return to Tex
Star the funds it had deposited into the Bank One reserve while the line of
credit had been in effect.  In November of 2002, Tex Star stopped repurchasing
defaulted notes, as required by its full recourse guaranty under the PSAs, and
Regal thereafter sold the vehicles that were repossessed on those notes.

Regal filed suit against Tex Star for
recovery of over $8,000,000 in deficiencies it allegedly suffered on 906 such
defaulted notes after it sold the repossessed vehicles.  Tex Star countersued
for recovery of the $975,000 it had deposited into the Bank One reserve, $472,000
in unrefunded repurchase reductions, and statutory damages of $4,000,000 for
Regal=s failure, in disposing of
repossessed vehicles, to provide notice and to conduct the sales in good faith
and in a commercially reasonable manner.  After a jury trial, the trial court
entered judgment awarding Regal damages of $4,136,000, attorney=s fees, and  interest, and denying
all relief sought by Tex Star.

Because the charge submitted to the
jury at trial (the Acharge@) and the parties= arguments on appeal are lengthy and
convoluted, we will attempt to address the issues that are dispositive of the
appeal in the order of most logical progression.

                                                                Regal=s Claims

                                                                      Overview








It is undisputed in this case that
Tex Star=s ceasing to repurchase defaulted
notes from Regal was a breach of the PSAs and that Regal suffered a loss on the
defaulted notes that Tex Star declined to repurchase.  However, under the
charge, Tex Star=s breach could be excused if Regal=s refusal to pay the aggregate
amounts of repurchase reductions was a prior material breach of the PSAs that
discharged Tex Star=s obligations.  In addition, even if Tex Star=s obligation to perform was not so
discharged, Regal=s right to recover a deficiency from Tex Star could
nevertheless be limited or barred under the charge to the extent that Regal=s sales of the repossessed vehicles
securing the notes were not conducted in accordance with the statutory
requirements of notice, good faith, and commercial reasonableness.[1]

                                                     Commercial
Reasonableness

Tex Star=s eighth issue contends that Regal
was barred from recovering any deficiency losses on its sales of repossessed
vehicles because there was no evidence that Regal sold the vehicles in a
commercially reasonable manner.

                                                              Standard
of Review

In a legal sufficiency review, we
determine whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review.  City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).  We credit favorable evidence if a reasonable
factfinder could, and disregard contrary evidence unless a reasonable
factfinder could not.  Id. 








Where there has been no objection to
the charge submitted to the jury, the sufficiency of the evidence is measured
by that charge even if the charge effectively raises the plaintiff=s standard of proof above what is
otherwise required by law.  See Romero v. KPH Consol., Inc., 166 S.W.3d
212, 221 (Tex. 2005) (holding that the sufficiency of evidence to prove malice
as an element of negligent credentialing, as contrasted from exemplary damages,
would be measured by the clear and convincing evidence standard provided in the
charge submitted even though the law only required it to be proved by a
preponderance of the evidence); City of Fort Worth v. Zimlich, 29 S.W.3d
62, 71 (Tex. 2000); Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000) (Ait is the court=s charge, not some other unidentified
law, that measures the sufficiency of the evidence when the opposing party
fails to object to the charge.@).

In this case, Question 6 of the
charge instructed the jury that, in awarding Regal damages for its deficiency
losses, it could consider only loans relating to vehicles that Regal sold in a
commercially reasonable manner and that:

Every aspect of the disposition,
including the method, manner, time, place and other terms must be commercially
reasonable.  A sale is commercially reasonable if it conforms to reasonable
commercial practices among dealers in the type of property that was the subject
of the sale.

(emphasis added).[2]

Regal contends that the portion of
the charge italicized above (the Adealer standard@) is not a required or minimum
standard, but merely a safe harbor that, if proved, conclusively establishes
commercial reasonableness, but need not be proved in order for the commercial
reasonableness requirement to be met.  Regal further argues that, rather than
being limited to the dealer standard, commercial reasonableness entails a
balancing of several factors, and is thus, by its very nature, a case-by-case
issue that defies bright line rules.  Under the circumstances of this case, we
disagree.













Regardless whether the standard urged
by Regal is legally correct or has been applied in other cases, the charge
submitted in this case states that a sale is commercially reasonable if it
conforms to the dealer standard.[3]  The plain
meaning of this language does not suggest that the dealer standard is either a
safe harbor or an otherwise optional standard,[4]
or that any other factors may even be considered, let alone balanced, but
instead that a sale is commercially reasonable if (and, thus, only if) the
dealer standard is met.[5]  Regal=s contention would thus not only
render the definition submitted in the charge meaningless, it would authorize a
reviewing court to measure the sufficiency of evidence against a different
standard than was submitted to the jury, rendering the jury=s decision meaningless and thereby
defeating the parties= right to a jury trial.  We thus reject Regal=s contention and proceed to review
the legal sufficiency of the evidence to prove commercial reasonableness based
on the dealer standard, as submitted in the change.

                                                       Sufficiency
of the Evidence

Regal contends that evidence of
commercial reasonableness was provided in the testimony of Jim Wright, John
Thorpe, Kemp McMillan, and George McIngvale.[6] 
Wright was responsible for disposing of Regal=s repossessed vehicles, and his
testimony outlined the procedures Regal followed in doing so.  Upon receiving a
repossessed vehicle, Wright prepared a Acondition report,@ which recorded the vehicle=s mileage and physical condition, and
a Abookout sheet@ containing a NADA value.[7] 
Regal initially then sold the vehicles to Awhoever@ it could, but later tried to obtain
at least two bids for each vehicle from wholesalers, and thereafter sold the
vehicles to the highest bidder.








Thorpe, an automobile auctioneer,
testified that he had seen other dealers use a sealed bid process to dispose of
repossessed vehicles,[8] and gave his
opinion that a sealed bid system is an Aacceptable way@ to do so.  McIngvale testified that
there are various ways to resell cars, including working through retailers,
advertised closed bid sales, open bid sales, direct auctions, and indirect
auctions.  McMillan, the president of Regal=s managing general partner, testified
that Regal did a good job of selling every repossessed vehicle the best it
could for the highest price it could get.








Although these witnesses provided
evidence describing how Regal sold its repossessed vehicles, identified other
available methods for doing so, and sometimes gave their individual opinions on
these methods, there is no evidence of which methods or procedures would be
considered reasonable commercial practices among dealers under similar
circumstances, which would not, or why.[9]  The jury
thus had no frame of reference for assessing whether Regal=s practices fit within what would, or
would not, actually be considered reasonable commercial practices among dealers.[10] 
Under these circumstances, we can find no evidence to show that the methods and
procedures Regal used to sell the vehicles it repossessed conformed to
reasonable commercial practices among dealers, as required by the charge.

  Therefore, Tex Star=s eighth issue is sustained to that
extent,[11] and we need
not address Tex Star=s other challenges to the recovery awarded to Regal.

                                                           First
Material Breach








Although Tex Star contends that Regal=s refusal to continue periodically
refunding the aggregate repurchase reductions was a material breach of the PSAs
(discharging Tex Star=s performance thereunder), the PSAs do not address this
possibility (presumably because they do not anticipate that Tex Star would
refrain from deducting the repurchase reductions from the amounts it paid to
repurchase the notes).  Instead, the only provision obligating Regal to pay Tex
Star amounts from the holdback reserve fund states:

Until this Agreement is terminated,
and if [Tex Star] is not in default under this Agreement or any other
obligation to [Regal] on such date, [Regal] will  pay to [Tex Star] upon [Tex
Star=s] written request within fifteen
(15) days following each calendar quarter or at [Regal=s] option more frequently, the amount
by which the Holdback Reserve Account balance exceeds fifteen percent (15%) of
the aggregate unpaid net balance of all [notes] held by [Regal] on such date.

Tex Star asserts that Regal breached
the PSAs by failing to periodically refund the entire amount of aggregate
repurchase reductions, without reference to whether the holdback reserve
account balance was greater than fifteen percent of the aggregate unpaid net
balance of all notes held by Regal on any dates that Tex Star claims the
refunds were due.  Because the PSAs impose no such obligation on Regal, Tex
Star has not established that Regal=s failure to make the refunds on the
basis claimed by Tex Star constituted any breach of the PSAs, let alone a
material breach that could discharge Tex Star=s obligation to perform.

Tex Star has also challenged
questions 1 through 5 of the charge on the ground that they improperly allowed
the jury to consider Tex Star=s alleged oral agreement to fund the Bank One reserve, and
its alleged breach of that separate agreement, in determining whether Tex Star
or Regal committed the first material breach of the PSAs, thereby discharging
the other from further performance under the PSAs.  However, because we have
concluded above that the action Tex Star relies upon to constitute Regal=s breach of the PSAs did not do so,
questions 1-5 and the jury=s answers to them are immaterial.








In addition, it is undisputed that
Regal=s refusal to refund repurchase
reductions to Tex Star occurred before Tex Star refused to make further
contributions to the Bank One reserve or to repurchase defaulted notes. 
Therefore, the jury=s finding that Tex Star committed the first material breach
of the PSAs would suggest that the jury had concluded that Regal=s previous refusal to refund the
repurchase reductions was not a breach or material breach of the PSAs, further
rendering questions 1 through 5 and the answers thereto immaterial.  Therefore,
we overrule Tex Star=s fourth, fifth, and thirteenth issues to that extent.

                                                              Tex
Star=s Claims

                                                    Deposits
to Bank One Reserve

Tex Star=s first issue challenges the trial
court=s failure to award the $975,000 it
had deposited into the Bank One reserve.  In response to charge question 8 on
Tex Star=s claim for money had and received,
the jury found that Regal held $975,000 that belonged to Tex Star in connection
with the Bank One reserve.  The trial court=s judgment did not award this amount
to Tex Star or offset the amounts awarded to Regal by this amount.[12]

Regal=s motion to disregard question 8
contended that there can be no claim for money had and received if the same
subject matter is covered by an express contract.   See, e.g., Fortune Prod.
Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000).  Because the jury
found that Regal and Tex Star had orally agreed that Tex Star would maintain
the dealer reserve account at the level required by the Bank One loan
agreement, Regal argued that question 8 was immaterial.  On appeal, Regal also
asserts that the agreement by Tex Star to fund the Bank One reserve constituted
an amendment to the PSAs as a matter of law, and that the PSAs allowed Regal to
hold all reserve account funds, from both the holdback and Bank One reserves,
until all of the notes had been liquidated, which had not occurred by the time
of trial.








To whatever extent there is evidence
of an oral agreement by Tex Star to fund the Bank One reserve, there is no
evidence or finding of any agreement that Regal would be entitled to keep the
funds that Tex Star had deposited into the Bank One reserve after the line of
credit was discontinued.  Nor was there any evidence or finding that any
agreement had been reached concerning the time or manner of returning those
funds to Tex Star, such that Tex Star could have sued for its breach. 
Therefore, the record does not reflect that any oral agreement to fund the Bank
One reserve foreclosed a quasi-contract claim for the return of those funds.  See
id. at 685 (affirming award of unjust enrichment damages to Cox because the
evidence did not reflect the specific terms of the unwritten agreement Conoco
had with Cox from and after 1990 and because Conoco did not request a jury
finding or move for a directed verdict to establish those terms).

Although Regal contends on appeal
that the oral agreement was an amendment to the PSAs (rather than a separate
agreement) as a matter of law, we have found no indication in the record that
Regal made this contention at trial, and it is unsupported by any evidence that
the parties intended the oral agreement to amend the PSAs[13] or by any legal authority suggesting
that a written agreement can be deemed amended by another agreement without
such intent, i.e., merely because each agreement relates in part to
common subject matter.[14]  Therefore,
based on the jury verdict, Tex Star was entitled to either an award of the
amount it had deposited to the Bank One reserve, or an offset of the damages
awarded against it by that amount.  Accordingly, Tex Star=s first issue is sustained to that
extent.

                                                             Statutory
Damages








Tex Star=s second issue contends that the
trial court erred by failing to award it statutory damages for Regal=s failure to dispose of the vehicles
in accordance with the Texas Business and Commerce Code.  However, the charge
instructed the jury that if it did Anot find that the preponderance of
the evidence supports a AYes@ answer, then answer ANo.@@  The jury questions on which Tex
Star relies in support of this issue then essentially asked the jury whether
Regal complied with its obligations to proceed in good faith and in a
commercially reasonable manner.  The jury=s ANo@ answers to these questions was thus
not an affirmative finding that Regal had not complied with these
obligations, as would be required to support a recovery by Tex Star, but merely
a failure to find that it had complied.[15] 
Because Tex Star=s second issue thus fails to demonstrate that the trial court
erred in awarding it no damages based on these portions of the verdict, it is
overruled.

                                                                  Cross
Appeal








Regal filed a notice of cross-appeal,
and its sole cross-appeal issue states that, in the event of a new trial,
it conditionally requests reinstatement of its fiduciary duty claims because
the trial court erred in refusing to submit Regal=s proposed jury questions on whether
Tex Star, George McIngvale, and Debora McIngvale breached fiduciary duties they
owed to Regal.[16]  Because
this issue was conditioned on the granting of a new trial, and no new trial is
being granted, it has no application to our disposition and is overruled.[17]








Accordingly, we: (1) reverse the
portions of the judgment awarding Regal damages, attorney=s fees, and interest, and render
judgment that Regal take nothing on its claims; (2) reverse the portion of the
judgment denying Tex Star recovery of its claim for money had and received,
render judgment that Tex Star is entitled to recovery on that claim in
accordance with the jury=s verdict, and remand the case to the trial court for entry of
judgment on that claim, including consideration of attorney=s fees, costs, and interest, if any;
and (3) affirm the portion of the judgment denying Tex Star recovery for breach
of contract, statutory damages, and penalties.

 

 

/s/        Richard H. Edelman

Senior Justice

 

Judgment
rendered and Substitute Opinion filed January 10, 2008.

 

Panel
consists of Justices Anderson, Hudson, and Edelman.*









[1]           Although not submitted or requested to be
submitted in the jury charge, Tex Star also contends that its liability was
discharged as a matter of law to the extent that Regal accepted the repossessed
vehicles from the purchasers in full satisfaction of the debt on the notes.  However,
our disposition of other issues makes it unnecessary to address this
contention.





[2]           See Tex. Bus. & Com. Code Ann. ''
9.610(b), 9.627(b)(3) (Vernon 2002).  The PSAs also require the sale of a
repossessed vehicle to be conducted in a commercially reasonable manner in
conformity with the Uniform Commercial Code.





[3]           Because neither Wilson, Havins,
nor any of the other authorities upon which Regal relies involved a jury charge
defining commercial reasonableness, as in this case, solely by reference to the
dealer standard, they do not bear on the issue before us.  See Wilson v.
Gen. Motors Acceptance Corp., 897 S.W.2d 818 (Tex. App.BHouston [1st. Dist.] 1994, no writ); Havins v.
First Nat=l Bank of Paducah, 919 S.W.2d 177 (Tex. App.BAmarillo
1996, no writ).





[4]           If the definition
submitted in this case created only an optional standard, rather than a
required condition, then other similarly worded charge definitions, such as
those below,  would do so as well:

An occurrence is caused by an act of
God if it is caused directly and exclusively by the violence of nature, without
human intervention or cause, and could not have been prevented by reasonable
foresight or care.

Comm. on Pattern Jury Charges, State
Bar of Tex., Texas Pattern Jury Charges: General Negligence, Intentional
Personal Torts PJC 3.5 (2006).

One who would otherwise be in the
general employment of one employer is a Aborrowed employee@ of another employer if such other
employer or his agents have the right to direct and control the details of the
particular work inquired about.

Id. PJC 7.2

An employee is acting in the scope of
his employment if he is acting in the furtherance of the business of his
employer.

Id. PJC 7.6

Consent [to medical treatment] is
implied by law if the patient is unconscious or otherwise unable to give
express consent and an immediate surgical procedure is necessary to preserve
his life or health.

Comm. on Pattern Jury Charges, State
Bar of Tex., Texas Pattern Jury Charges: Malpractice, Premises, Products
PJC 51.15 (2006).

Apparent authority exists if a party
(1) knowingly permits another to hold himself out as having authority or, (2)
through lack of ordinary care, bestows on another such indications of authority
that lead a reasonably prudent person to rely on the apparent existence of
authority to his detriment.

Comm. on Pattern Jury Charges, State
Bar of Tex., Texas Pattern Jury Charges: Business, Consumer, Insurance,
Employment PJC 101.4 (2006).

Implied ratification occurs if a
party, though he may have been unaware of unauthorized conduct taken on his
behalf at the time it occurred, retains the benefits of the transaction
involving the unauthorized conduct after he acquired full knowledge of the
unauthorized conduct.

Id. PJC 101.5

One party performs compensable work
if valuable services are rendered or materials furnished for another party who
knowingly accepts and uses them and if the party accepting them should know
that the performing party expects to be paid for the work.

Id. PJC 101.42.

A relationship of trust and
confidence existed if Paul Payne justifiably placed trust and confidence
in Don Davis to act in Paul Payne=s best interest.

Id. PJC 104.1





[5]           Regal does not dispute the
meaning of the charge definition on its face, but instead contends that
because the definition was correctly worded, it cannot be applied based on the
charge language in isolation, Adisregarding the UCC, its official commentary, WHITE &
SUMMERS, and prior case law.@  On the contrary, regardless whether the definition was
correct, incorrect, complete, or incomplete, because Regal did not object to the
definition that was submitted, we are not at liberty to engraft or adopt a
different standard after the fact from sources outside the charge.

Ironically,
Tex Star submitted a proposed charge question which did not define Acommercially reasonable,@ but instead listed sixteen factors that could be considered, one of
which was the dealer standard.  This question would have considerably lowered
Regal=s standard of proof on commercial reasonableness
relative to the definition submitted, but the trial court refused to submit it,
presumably because Regal would not agree to it.





[6]           McIngvale and his wife, Deborah, are
co-owners of Tex Star.





[7]           The National Automobile Dealers
Association, or NADA, provides, among other things, used vehicle pricing and
information for buyers and sellers.  See http://www.nada.com.





[8]           The parties dispute whether the procedure
employed by Regal was, in fact, a sealed bid process.





[9]           The trial court denied
Regal=s request to allow Wright to testify
on standard practices in the used vehicle market and Regal=s compliance with those practices
because he had not been timely designated as an expert witness.  Regal has not
assigned error to that ruling on appeal.

It is arguable that obtaining a
commercially reasonable price for a vehicle, such as that published by the
NADA, supports an inference that a commercially reasonable practice was
employed to obtain that price.  In this case, however, the charge instructed the
jury that every aspect of the disposition was required to be commercially
reasonable, i.e., without regard to the outcome, and there is no
evidence to support an inference that a NADA price could only be obtained if
commercially reasonable practices were followed and not by mere happenstance.

Because we
conclude that there was no evidence of commercial reasonableness of any kind in
this case, we do not address whether expert testimony is required to prove
commercial reasonableness.  We cannot, for example, rule out the possibility
that, in a given set of facts and jury charge language, sufficient proof could
be provided by a fact witness with extensive experience, by reference to
promulgated industry or trade association guidelines, or otherwise to enable a
jury to decide this issue.





[10]          In addition, to whatever extent a particular
method used by Regal, such as the use of sealed bids, could be a
reasonable commercial practice among dealers under any circumstances, there is
no evidence of what those circumstances would be, or of how that method would
have to be carried out, in order for it to be considered commercially
reasonable among dealers.  There is, however, evidence that: (1) Regal did not
advertise any of its sales; (2) Wright=s
only method of soliciting bids was to call wholesalers he knew; (3) Regal
accepted bids that were well below NADA values; (4) those who purchased from
Regal usually resold the vehicles quickly at higher prices, with little or no
repair work, including many that were taken directly to auction by the
purchasers; (5) Regal deviated from its own procedures in having no NADA value
sheet in the file for more than 300 repossessions, selling 200 vehicles with
only one bid, and having no condition report in numerous files; (6) Regal=s claim that it was unable to obtain as high a yield
on ten vehicles it sold at auction as with private sales to wholesalers is
unsupported by the evidence in that files for eight of the ten sales made at
auction do not contain any other bids for comparison purposes, and the
remaining two files establish that the auction price was actually higher than
the wholesalers= bids; (7) of the 287 vehicles for which Tex Star had
resale information, 138 were sent to wholesale public auctions after Regal sold
them to a wholesaler, and yielded an average profit of $874 above what Regal
received; and (8) although Wright testified that any licensed wholesaler with
adequate credit was allowed to bid on Regal=s
repossessed vehicles, Thorpe testified that Wright did not permit him to do so
on several occasions.





[11]          In Aconsumer
transactions,@ a secured party that fails to prove compliance with
the statutory requirements for disposition of collateral is barred from
collecting any deficiency.  See Tex. Bus. & Com. Code Ann. '
9.626(a), State Bar Committee cmt. (Vernon 2002).  Because Question 6 of the
charge instructed the jury, in deciding damages, to consider only notes
relating to vehicles that Regal sold in a commercially reasonable manner, such
that a recovery of deficiencies on any other vehicles would be barred, it
thereby treated the transactions as consumer transactions for this purpose, 
and neither party objected or has assigned error to that aspect of the charge.





[12]          We cannot discern from the record whether
the jury could have deducted this amount from any of the damages it awarded.





[13]          There is also no evidence that: (1) the
alleged oral agreement purported to modify or replace any of the existing
reserve provisions or other obligations under the PSAs; or (2) the Bank One
reserve funds were intended to ever be paid to Regal for any reason or to serve
any purpose other than solely to secure the Bank One loan.





[14]          Regal also contends on appeal that Tex Star
waived its right to judgment on the disregarded jury finding by failing to
challenge all grounds asserted in the motion to disregard.  However, Regal does
not specify, and we have not found, any such unchallenged grounds.





[15]          See, e.g., Carl J. Battaglia, M.D., P.A.
v. Alexander, 177 S.W.3d 893, 903 (Tex. 2005); Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 690 (Tex. 1989); Morris v. Holt, 714 S.W.2d 311, 313
(Tex. 1986); Grenwelge v. Shamrock Reconstructors, Inc., 705 S.W.2d 693,
694 (Tex. 1986); C & R Transp., Inc. v. Campbell, 406 S.W.2d 191,
194 (Tex. 1966).





[16]          See Tex. R. Civ. P. 277, 278 (requiring a trial court to
submit to the jury the questions, instructions, and definitions that are raised
by the pleadings and evidence and are proper to enable the jury to render a
verdict).





[17]          In addition, the portions
of Regal=s briefs addressing this issue do not
indicate: (1) what specific fiduciary duty(s) any of these defendants had which
they breached; (2) what specific conduct by any of these defendants constituted
a breach of any fiduciary duty or when that conduct occurred relative to when
the duty arose; (3) how any breach of fiduciary duty by any defendant caused
damage to Regal; or (4) where in the record evidence of these things can be
found. See Tex. R. App. P. 38.1(h) (requiring appellant=s brief to contain a clear and
concise argument for the contentions made, with appropriate citations to
authorities and to the record).  In this regard, even Regal=s reply brief in support of its
conditional cross-appeal focuses almost exclusively on the existence of the
relationship and merely states with regard to the breach, AMcIngvale does not even contest the
sufficiency of the evidence on the element of breachChe simply argues that no fiduciary
duty existed.  Therefore we will not belabor that point.@

Moreover, Regal=s
briefs contend that the existence of the fiduciary relationships was based on:
(1) George McIngvale and Tex Star being general partners of Regal: and (2)
Debora McIngvale being controller, and thus an agent, of Regal.  However, the
formal relationships that exist between partners and between principals and
agents give rise to a fiduciary duty as a matter of law.  See, e.g., Crim
Truck & Tractor Co. v. Navistar Int=l Transp. Corp.,
823 S.W.2d 591, 593B94 (Tex. 1992).  To the extent another moral, social,
domestic, or personal relationship of trust and confidence may give rise to an
informal fiduciary duty, the existence of such a relationship is usually a
question of fact.  See Meyer v. Cathey, 167 S.W.3d 327, 330B31 (Tex. 2005); Crim Truck, 823 S.W.2d at 594.

The jury question that Regal
requested on the existence of a fiduciary duty did not pertain to the existence
of a formal fiduciary relationship, such as a partnership or principal-agent
relationship (and none would have been appropriate on such a question of law
unless the facts giving rise to the existence of such a duty were disputed),
but was instead directed to the existence of an informal fiduciary
relationship, as would arise in another context as a question of fact.  See
Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury
Charges: Business, Consumer, Insurance, Employment PJC 104.1, 104.2 comment
(2006).

In addition, Regal did not request
the trial court to rule on whether the evidence established a formal fiduciary
relationship as a matter of law (such as by a motion for directed verdict,
motion for entry of judgment, or the like).  During trial, Tex Star and the
McIngvales moved for an instructed verdict on Regal=s fiduciary duty claims and provided
the trial court a memorandum contending that the parties= relationships did not give rise to a
fiduciary duty as a matter of law.  Regal has cited, and we have found, no
portion of the record where the trial court ruled on this motion other than by
refusing the submission of Regal=s jury questions.  In and of itself,
that ruling addresses only whether there were fact issues to be decided by the
jury concerning the matters set forth in those questions, not whether any
fiduciary duties existed as a matter of law, as Regal contends on appeal; and
Regal has not identified or assigned error to any other ruling by the trial
court that could have addressed that issue.

Therefore,
apart from being conditioned on an event that has not occurred, Regal=s cross-point: (1) fails to cite evidence establishing
the existence of an informal fiduciary relationship or the breach of any
fiduciary duty (formal or informal) and damages therefrom, and thus fails to
demonstrate that the trial court erred by refusing to submit the jury questions
on fiduciary duty; and (2) assigns no error to any other ruling by the trial
court with regard to its claim for breach of a formal fiduciary duty, and thus
affords no basis for relief on that claim.





*           Senior Justices Harvey H. Hudson and
Richard H. Edelman sitting by assignment.