

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00661-CR

Karl **KEENE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR11671
Honorable Ron Rangel, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  June 12, 2013

AFFIRMED

Karl Keene was convicted of misapplication of fiduciary property in an amount greater than $1500 but less than $20,000. He was sentenced to two years of confinement and was ordered to pay restitution in the amount of $54,944. On appeal, he argues that the evidence is legally insufficient to support his conviction and that "the restitution order is illegal." We affirm.

### BACKGROUND

Keene, a luxury pool builder, entered into contracts with both Lorraine Baker and Glen Clarke, respectively. On December 15, 2007, Lorraine Baker signed a contract with Keene's

company, Presidential Pools, to put a pool in at her home for the total cost of $43,680.00. The contract included the following payment schedule:

1. $4,368 deposit by buyer to contract and be placed on construction schedule.

2. $17,472 due at start of excavation and to complete Plumb 1 and Steel Pool Frame. At this phase, swimming pool is ready to be concreted.

3. $13,104 due day before concrete delivery for rough pool shell, concrete pool shell is formed in (1) workday.

4. $6,552 due at waterfall completion.

5. $2,184 due at start plaster. Pool ready for water on plaster day. Final clean up of yard on plaster day too.

The same day that Baker signed the contract with Presidential Pools, she gave Keene the first payment due, a check in the amount of $4,368. At the start of excavation, she also gave Keene's employee Theresa Casals a cashier's check in the amount of $17,472. On February 4, 2008, Baker gave a check for the amount of $13,140.[1] Despite Baker's payment, the concrete pool shell or "gunite" was never poured. She then attempted to contact Keene and his employee Casals, but Keene failed to respond and changed his phone number. After months of failed attempts to contact Keene and with her pool still not completed, Baker called the Bexar County Sheriff's Office and filed a complaint. Baker paid Keene $34,944 of the total contract price of $43,468.

Like Baker, Glen Clarke entered into a contract with Keene's Presidential Pools to construct a pool in his backyard. Pursuant to the contract, the total cost of the pool was $54,740, and payment was due according to the following schedule:

1. $4,740 deposit by buyer to contract and be placed on construction schedule.

2. $17,500 due at start of excavation.

---

[1] Baker testified that Keene took her personal checks to the bank, cashed them, and then got cashier's checks. According to Baker, her personal checks were replaced by two different cashier's checks.

3. $2,500 due at completion of Plumb 1 and Steel Pool Frame. At this phase swimming pool is ready to be concreted.

4. $17,500 due day before concrete delivery for rough pool shell. Concrete pool shell is formed in (1) workday.

5. $10,000 due at grotto completion.

6. $2,500 due to start plaster. Pool ready for water on plaster day. Final clean up of yard on plaster day too.

Pursuant to the agreement, before any work had begun, Clarke made the first payment to Keene for $4,740. Clarke testified he also made the next payment of $17,500, which was due at the start of excavation. Clarke testified that he also gave Keene a check in the amount of $2,500, and another check in the amount of $17,500, which was due before concrete delivery for the rough pool shell or "gunite." According to Clarke, the pool was slowly being built, but the project was progressing. However, when it was time to put the steel into the pool, Clarke was informed by a worker that the pool was shallower than what the contract required. So, Clarke called Keene and told him the steel could not be put into the pool until the pool had been properly dug to the right depth. Excavators came and dug the pool deeper. The steel and rough plumbing were then put in and the concrete was poured for the rough pool shell. The next scheduled payment was $10,000, which was due when the grotto was completed. After a couple of months passed without any work on his pool, Clarke called Keene. According to Clarke, Keene said that if Clarke gave him $10,000, Keene would have the workers at Clarke's house the next day. Clarke gave Keene a check for $10,000. Without Keene's knowledge, Clarke followed Keene to a bank, where Clarke assumed Keene deposited the check. Clarke then followed Keene to Keene's home. Nobody appeared at Clarke's home the following day. When he called Keene, Keene claimed he was having trouble getting crews to show up to work. Clarke kept calling Keene and started dropping by Keene's home to talk to Keene in person. Eventually, Clarke sent Keene a certified letter

demanding he complete the project. At the time Clarke sent the letter, he had paid Keene $52,000 of the agreed $54,000 for the pool. When Clarke went to Keene's office, he was told that Keene no longer had his office there. Keene never completed Clark's pool. Clarke then filed a criminal complaint against Keene.

### MISAPPLICATION OF FIDUCIARY PROPERTY

On appeal, Keene argues the evidence is legally insufficient to support his conviction of misapplication of fiduciary property. In a federal due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames*, 353 S.W.3d at 860. Therefore, on appellate review, we determine whether based on "cumulative force of all the evidence" the necessary inferences made by the trier of fact are reasonable. *Id.* We conduct this constitutional review by measuring the evidentiary sufficiency with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.*

A person commits the offense of misapplication of fiduciary property "if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary . . . in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held." TEX. PENAL CODE ANN. § 32.45(b) (West 2011). For purposes of section 32.45, "fiduciary" includes the following:

(A) a trustee, guardian, administrator, executor, conservator, and receiver;

(B) an attorney in fact or agent appointed under a durable power of attorney as provided by Chapter XII, Texas Probate Code;

(C) *any other person acting in a fiduciary capacity*, but not a commercial bailee unless the commercial bailee is a party in a motor fuel sales agreement with a distributor or supplier, as those terms are defined by Section 153.001, Tax Code; and

(D) an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary.

*Id.* § 32.45(a)(1) (emphasis added).

Keene argues that there is no evidence that he "was acting as a fiduciary in his dealings with the complainants in this case." Keene claims that to impose a fiduciary relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit. For support, he cites a civil case from the Texas Supreme Court, *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005), which states that "[t]o impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." "However, section 32.45 of the penal code does not construe the term 'fiduciary' in such a strict manner." *Coleman v. State*, 131 S.W.3d 303, 308 (Tex. App.—Corpus Christi 2004, pet. ref'd). Under section 32.45, "fiduciary" includes not only trustees, guardians, attorneys in fact, etc., but also "any other person *acting* in a fiduciary capacity." TEX. PENAL CODE ANN. § 32.45(a)(1) (West 2011).

In *Merryman v. State*, 391 S.W.3d 261, 269 (Tex. App.—San Antonio 2012, pet. ref'd), we noted that section 32.45(a) includes within its definition of "fiduciary" "any person acting in a fiduciary capacity." We explained that although the phrase "acting in a fiduciary capacity" is not defined by the Texas Penal Code, the Texas Court of Criminal Appeals "has construed the undefined phrase according to its plain meaning and normal usage to apply to anyone acting in a fiduciary capacity of trust." *Id.* (citing *Coplin v. State*, 585 S.W.2d 734, 735 (Tex. Crim. App.

[Panel Op.] 1979)). We further explained that based on the "plain and ordinary meaning of the word 'fiduciary' as 'holding, held, or founded in trust or confidence,'" this court had held in the past that

> a person acts in a fiduciary capacity within the context of section 32.45 "when the business which he transacts, or the money or property which he handles, is not his or for his own benefit, but for the benefit of another person as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part."

*Id.* (quoting *Gonzalez v. State*, 954 S.W.2d 98, 103 (Tex. App.—San Antonio 1997, no pet.)).

As here, in *Merryman*, 391 S.W.3d at 268-69, we considered whether there was sufficient evidence to support a contractor's conviction for misapplication of fiduciary property when he had failed to complete the agreed-to construction projects. We explained that "[i]n order for the customers' property to be held in a fiduciary capacity, there must have been an agreement between [appellant] and the customers that the property was entrusted for a particular purpose." *Id.* at 269. "The agreement under which a fiduciary holds property or money need not be a written contract, but may be only an understanding or arrangement as to a particular course of action." *Id.* at 270. "The State is only required to prove that the fiduciary failed to apply the funds according to the terms of the agreement; the actual manner in which the fiduciary applied the funds is immaterial." *Id.*

Keene claims that the money he held "was his payment, earned for services rendered" and was not money "held to be paid out to others." In *Merryman*, the appellant made a similar argument. We explained, however, that there was evidence of an agreement between the appellant and the customers that the property had been entrusted for a particular purpose. We noted that the customers had testified that "they entrusted their funds to [appellant] under an agreement that he would complete their construction projects." *Id.* at 270. "Further, the evidence showed that [appellant] had full knowledge of the agreements under which he accepted the

customers' payments." *Id.* We rejected the appellant's argument that because "the contracts did not specify how the customers' payments were to be applied, i.e., what portions were allocated for his profit or for labor, or that the funds could not be intermingled with funds from other projects or with his personal funds," that there was "no evidence that he held the funds in trust for the customers' benefit." *Id.* We concluded that the "terms of the contracts do not . . . control the analysis of whether there was a fiduciary responsibility owed by [appellant]." *Id.* Instead, we emphasized that the "key fact" was that "there was an overall agreement or understanding between the parties, beyond the terms of the contracts, that the customers' funds were entrusted to [appellant] for a construction project." *Id.* We concluded that the appellant's "actions violated the agreement and prevented the customers from realizing the full benefit of the funds they entrusted to [appellant], resulting in a loss to the customers of the value of their funds." *Id.* Thus, we held that the evidence was legally sufficient that the appellant acted in a fiduciary capacity within the meaning of section 32.45. *Id.*

Here, both Clarke and Baker testified that with the exception of a couple of small payments, their agreement with Keene was that payments were to be made prior to the beginning of each major stage in construction. Baker testified that when she first signed the agreement, she asked Keene why the payments were scheduled in the manner they were. According to Baker, Keene told her that because he did not have a lot of cash, Baker "had to pay for the services up front" and that "each time [she] paid for the service, it would be completed before the next service." Baker testified that it was her understanding that when she paid him, Keene would "take that money and use [it] to complete the construction on [her] pool." Baker was adamant that she did not give Keene permission to use the money that she had given him for any other customer's jobs or for any other purpose. According to Baker, she paid $13,104 for the gunite, but the gunite was never poured. Like Baker, Clarke testified that he did not give Keene

permission to use the money he gave Keene for personal expenditures or anything not related to his pool. Clarke testified that although pursuant to their written agreement, he was required to pay Keene $10,000 only after the grotto was completed, he in fact paid Keene $10,000 before the grotto was completed because Keene promised to have workers at Clarke's house the next day to complete the project. No workers ever came, however, and Keene never completed the grotto. Thus, as in *Merryman*, here, there was evidence of an understanding between the parties that Baker's and Clarke's funds were entrusted to Keene for their respective construction projects. There was also evidence that Keene misapplied the funds. Both projects were left unfinished, and bank records admitted in evidence showed that the funds deposited were not used to complete the stage of construction for which they were dedicated. And, as the stage of construction was not completed, these funds could not have constituted Keene's profit. Reviewing all the evidence in the light most favorable to the verdict, we conclude there is legally sufficient evidence to support Keene's conviction for misapplication of fiduciary property.

### RESTITUTION

A trial court is authorized to order a defendant to pay restitution to a victim of an offense. TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West Supp. 2012). In determining whether to order restitution and the amount of restitution, the trial court shall consider "the amount of loss sustained by any victim" as a result of the offense and "other factors the court deems appropriate." *Id.* art. 42.037(c). The State has the burden of proving, by a preponderance of the evidence, "the amount of the loss sustained by a victim as a result of the offense." *Id.* art. 42.037(k). The defendant has the burden of proving, by a preponderance of the evidence, his financial resources and his financial needs. *Id.* We review the trial court's determination of the amount of restitution ordered for abuse of discretion. *Campbell v. State*, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999). A trial court abuses its discretion when it sets restitution in an amount

that is unjust or unsupported by facts. *Id.* at 696. Further, a trial court may not order restitution for an offense for which the defendant is not criminally responsible. *Id.* And, the restitution must be only for the victim or victims of the offense for which the defendant is charged. *Id.* at 696-97.

In his second issue, Keene argues that the trial court abused its discretion in ordering restitution in the amount of $54,955, payable to Baker and Clarke. Keene notes that the jury convicted him on the lesser-included offense of misapplication of fiduciary property in an amount greater than $1,500 but less than $20,000. In doing so, Keene argues that the jury rejected the indicted offense of misapplication of fiduciary property in an amount greater than $20,000, but less than $100,000. And, because a trial court may not order restitution for an offense for which a defendant is not criminally responsible, Keene argues that the trial court erred in ordering restitution in an amount greater than that which was found by the jury. According to Keene, the trial court is limited to the damages that were determined by the jury to have been incurred by the complainants.

The Texas Court of Criminal Appeals rejected this argument, however, in *Campbell v. State*, 5 S.W.3d 693, 697 (Tex. Crim. App. 1999). In *Campbell*, the appellant pled no contest to theft by deception of property valued at $20,000 or more but less than $100,000. *Id.* at 694. The trial court ordered restitution in the amount of $100,000. *Id.* The court of appeals struck the trial court's restitution amount because it exceeded the "parameters of the verdict." *Id.* at 697. The court of appeals reasoned that because second-degree theft by definition involves stolen property at less than $100,000, a restitution order in excess of that amount was an abuse of discretion. *Id.* The Texas Court of Criminal Appeals reversed the court of appeals, explaining that while the "legislature intended the property-value range of theft to determine the punishment," such a "structure does not dictate the appropriate amount of restitution." *Id.* at 700. Instead, a trial court is limited to whether there is a factual basis in the record to support the amount of restitution

ordered. *Id.* at 698. "Conviction by the jury for a certain property-value does not restrict the restitution amount that the trial judge might find to be the justified amount." *Id.* Thus, we must consider whether there was a factual basis in the record to support the trial court ordering restitution in the amount of $54,944. Specifically at the hearing, the trial court stated that it was ordering restitution in the amount of $34,944 payable to Baker and $20,000 payable to Clarke.

Baker testified that she made a payment of $4,368 to be placed on the construction schedule. She then made a second payment of $17,472 to start excavation, which she testified resulted in a hole that was not the correct depth. She paid Keene $13,104.00 for gunite to be poured, but it never was poured. Thus, she paid Keene $34,944 for basically a hole dug in the ground with some steel. Because Baker did not immediately have additional funds to pay someone else to complete the pool, there was an empty hole in her yard for months that deteriorated over time because of the weather. When Baker was able to pay someone else, she had to pay that pool company to fix some of the work Keene had done. At the time of trial, Baker testified that she was still in the process of trying to complete her pool and had had to put an additional $30,000 into the pool.[2] Thus, there is a factual basis in the record to support the trial court's restitution to Baker in the amount of $34,944.

Clarke testified that he paid Keene $4,740 to be placed on the construction schedule. He then paid $17,500 that was due at the start of excavation and made the payment of $2,500 that was due at the completion of plumbing and steel pool frame. Before the gunite was poured, Clarke paid Keene another $17,500. At this point, the rough plumbing had been installed and the gunite had been poured. He then gave Clarke another $10,000 even though it was not actually due until the grotto was complete. The grotto was never completed by Keene. Although Clarke

---

[2] We note that we disagree with Keene that article 42.037(b)(1) of the Texas Code of Criminal Procedure precludes the trial court in this case from considering the amounts Baker and Clarke had to expend, respectively, to fix the workmanship of their pools and complete their pools.

paid Keene a total of $52,240, he estimated that Keene had only done about seventy percent of the work. Further, Clarke testified that the plumbing Keene had put in was not done correctly and that he had to drill and place new pipes in certain areas of the pool. According to Clarke, he had to spend another $20,000 to $25,000 to complete the pool. Thus, there is a factual basis in the record to support the trial court setting restitution in the amount of $20,000 payable to Clarke. We therefore find no abuse of discretion by the trial court in setting the amount of restitution.

## CONCLUSION

We affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish