# NO. 12-09-00359-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRIAN SCOTT DOYLE and*<br>*NDEMAND, INC.,*<br>*APPELLANTS* | § | *APPEAL FROM THE 273RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *JAY R. TESKE,*<br>*APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Brian Scott Doyle and NDemand, Inc. appeal the trial court's judgment in favor of Jay R. Teske in Teske's suit for damages arising out of a business relationship between him and Doyle. Doyle and NDemand, Inc. raise fourteen issues on appeal. We affirm in part and reverse and render in part.

### BACKGROUND

Doyle and Teske decided to start a computer business together. Doyle, who had previously worked on computers, agreed to provide the labor, and Teske, who had previously made money, agreed to provide the capital. They discussed several different names for the business before agreeing on NDemand Technologies, Inc.

In January 2000, after they had agreed on the name of the business, Teske wrote a check for $25,000.00 made payable to Doyle to fund NDemand Technologies. However, neither Doyle nor Teske ever incorporated NDemand Technologies. Instead, Doyle simply deposited Teske's check into Doyle's personal account. When he filed his personal tax return for the year, Doyle claimed the $25,000.00 as income. Teske also helped Doyle obtain a credit card for NDemand

Technologies by serving as guarantor for the card. Although the credit card was for the business, Doyle used the credit card to purchase items that were not business related.

After about two years, NDemand Technologies was failing. Doyle decided that he should start another business, one focused on bringing internet to rural areas. Doyle called the new business NDemand, Inc. He lobbied Teske to invest in the new business, but Teske declined. Thus, Doyle began NDemand, Inc. with new investors. Around the same time, NDemand Technologies ceased operations completely.

At the time NDemand Technologies failed, the business credit card had a sizeable balance. Doyle did not have the funds to pay the credit card debt so Teske, as guarantor, was required to make the payments. Teske learned of the credit card debt sometime in December 2002, made his first payment on the debt in January 2003, and finally paid off the credit card in August 2004. After paying off the card, Teske asked for detailed billing. Approximately two weeks after his request, the bank provided him with the past billing, and Teske learned that Doyle had used the credit card for personal purchases. Sometime later, Teske also learned that Doyle never set up a corporation for NDemand Technologies.

Believing that Doyle's actions were wrong and had cost him money, Teske sued Doyle and NDemand, Inc. in January 2007 for fraud, breach of fiduciary duty, Blue Sky violations, and fraud in stock transactions. After a bench trial, the trial court awarded Teske a judgment against Doyle and NDemand, Inc. This appeal followed.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In their initial brief, Doyle and NDemand, Inc. stated that the trial court failed to provide findings of fact and conclusions of law even though two requests for findings and conclusions had been made. Doyle and NDemand, Inc. did not, in their initial brief, seek relief based on this inaction of the trial court. However, in their reply brief, without listing it as a separate issue, Doyle and NDemand, Inc. assert that the trial court committed reversible error by failing to provide findings of fact and conclusions of law.

Doyle and NDemand, Inc.'s reply brief may address any matter in Teske's brief, but a reply brief is not intended to allow parties to raise new issues. *See* TEX. R. APP. P. 38.3; *Campbell v. Stucki*, 220 S.W.3d 562, 570 (Tex. App.–Tyler 2007, no pet.). Therefore, this argument is not properly before this court. *See Campbell*, 220 S.W.3d at 570.

Even if we consider Doyle and NDemand, Inc.'s argument, the outcome does not change. Rule 296 authorizes any party in a nonjury trial to request written findings of fact and conclusions of law. TEX. R. CIV. P. 296. The request shall be filed within twenty days after the judgment is signed and served on all other parties in accordance with Rule 21a. *Id*. The trial court shall file its findings of fact and conclusions of law within twenty days of a timely filed request. TEX. R. CIV. P. 297. If the trial court fails to so file findings of fact and conclusions of law, "the party making the request shall, within thirty days after filing the original request, file with the clerk . . . a 'Notice of Past Due Findings of Fact and Conclusions of Law' which shall be immediately called to the attention of the court by the clerk." *Id*. If a party fails to file a Rule 297 reminder, the party waives any complaint regarding the trial court's failure to file findings of fact and conclusions of law. ***Alpert v. Crain, Caton & James, P.C.***, 178 S.W.3d 398, 410 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). The scheme is a sensible one in that, if the judge does not comply with the initial request, "the more rigorous procedure of Rule 297 will ensure that the court is in a timely fashion fully apprised of the request and the party's continuing interest in having it honored." ***Cherne Indus., Inc. v. Magallanes***, 763 S.W.2d 768, 772 (Tex. 1989).

Here, the record contains four documents relevant to findings of fact and conclusions of law. The first is a letter from Doyle and NDemand, Inc.'s counsel to the trial court judge stating that he "faxed herewith [his] proposed findings of fact and conclusions of law." The letter is dated June 9, 2009, and bears a filemark of June 26, 2009. The proposed findings of fact and conclusions of law are not a part of the record at that point. The second is the trial court's judgment, with no findings of fact and conclusions of law, signed on July 16, 2009. The third is "Defendants Brian Doyle and NDemand, Inc.'s Request for Findings of Fact and Conclusions of Law." This document, filed on July 24, 2009, requests the trial court to make findings of fact and conclusions of law within twenty days after the judgment is signed. The only reference to Rule 297 in the document is the assertion that "Rule 297 of the Texas Rules of Civil Procedure provides that the 'Court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed.'" The fourth document is "Defendants Brian Doyle and NDemand, Inc.'s Findings of Fact and Conclusions of Law" filed on April 1, 2010. This document is unsigned. The certificate of service contains the date June 9, 2009, but again the signature block under the certificate of service is blank.

Doyle and NDemand, Inc. complied with Rule 296, and properly requested findings of fact and conclusions of law. However, they did not take the extra necessary step of complying with Rule 297, and thus, never "ensure[d] that the court [was] in a timely fashion fully apprised of the request and the party's continu[ed] interest in having it honored." *See id*. Therefore, any complaint related to the trial court's failure to file findings of fact and conclusions of law is waived.

Doyle and NDemand, Inc.'s issue related to the trial court's failure to file findings of fact and conclusions of law, which was raised in their reply brief, is overruled.

## STANDARD OF REVIEW

In a nonjury trial, when, as here, a trial court makes no separate findings of fact or conclusions of law, we must assume that the trial court made all findings in support of its judgment. *Pharo v. Chambers Co.*, 922 S.W.2d 945, 948 (Tex. 1996). The trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam). When, as here, the appellate record includes the reporter's record, the trial court's implied fact findings are not conclusive. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). A trial court's implied findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's verdict. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

A party who challenges the legal sufficiency of the evidence to support an issue on which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict, indulging every reasonable inference in favor of the verdict. *See Autozone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008) (per curiam); *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 286 (Tex. 1998). To determine whether legally sufficient evidence supports a challenged finding of fact, the reviewing court must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their

testimony. *Id*. at 819. The finder of fact is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id*. Accordingly, reviewing courts must assume that the finder of fact decided all credibility questions in favor of the findings, and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *Id*. at 819-20. A finder of fact "may disregard even uncontradicted and unimpeached testimony from disinterested witnesses" where reasonable. *Id*. at 820.

In addition, it is within the finder of fact's province to resolve conflicts in the evidence. *Id*. at 820. Consequently, we must assume that, where reasonable, the finder of fact resolved all conflicts in the evidence in a manner consistent with the findings. *Id*. Where conflicting inferences can be drawn from the evidence, it is within the province of the finder of fact to choose which inference to draw, so long as more than one inference can reasonably be drawn. *Id*. at 821. Therefore, we must assume the finder of fact made all inferences in favor of the findings if a reasonable person could do so. *Id*. The final test for legal sufficiency must always be "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id*. at 827. Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.–Austin 1992, no writ). In addressing a factual sufficiency of the evidence challenge, an appellate court must consider and weigh all of the evidence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*. However, this court is not a fact finder, and we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact. *Durban v. Guajardo*, 79 S.W.3d 198, 208 (Tex. App.–Dallas 2002, no pet.) The trial court may take into consideration all of the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Canal*

5

*Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557-58 (Tex. App.–Tyler 2007, pet. denied) (op. on reh'g).

In their second issue, Doyle and NDemand, Inc. assert that judgment against NDemand, Inc. is improper because NDemand, Inc. was not in existence at the time of the acts sued upon and NDemand, Inc. had no dealings with Teske other than providing him internet service. In his response, Teske asserts that Doyle acquired NDemand, Inc. by March 17, 2004. Teske further notes that NDemand, Inc. did not file a verified pleading asserting that it is not liable in the capacity in which it was sued. Thus, Teske asserts that there is "some evidence in the record sufficient to warrant the trial court, in the absence of appropriate pleadings, to find that NDemand, Inc. was the beneficiary of the funds advanced by Teske to Doyle." Teske cites no authority to support this position.

After a thorough review of the record, we have found no evidence showing that NDemand, Inc. was the beneficiary of the funds advanced by Teske to Doyle. Doyle deposited the $25,000.00 check in his personal checking account. No evidence was presented that any of that money made its way to NDemand, Inc. Doyle used the NDemand Technologies' credit card for personal purchases and NDemand Technologies' purchases. Again, no evidence was presented that the credit card was used for NDemand, Inc.'s purchases.

Further, NDemand, Inc.'s argument is not about capacity. It argues that it is not liable to Teske because NDemand, Inc. had no interactions with Teske. Thus, NDemand, Inc.'s argument "does not fall within the ambit of rule 93(2), and the lack of verification does not prevent [it] from asserting [its] argument." *See Toles v. Toles*, 113 S.W.3d 899, 909 (Tex. App.–Dallas 2003, pet. denied).

Finally, NDemand, Inc. cannot be liable under agency theory. The acts of a corporate agent on behalf of the corporation generally are deemed to be the corporation's acts. *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) (per curiam). But here, there was no evidence that Doyle's acts were on behalf of NDemand, Inc. Instead, Doyle deposited Teske's $25,000.00 check into his personal checking account and used the credit card for personal purchases and purchases related to NDemand Technologies' business. Additionally, there was no evidence that Doyle was a corporate agent of NDemand, Inc. at the time of the allegedly tortious actions.

6

There is a complete absence of evidence that NDemand, Inc. committed any of the alleged wrongful acts against Teske. *See City of Keller*, 168 S.W.3d at 810. Accordingly, we sustain Doyle and NDemand, Inc.'s second issue. Because this issue is dispositive as to NDemand, Inc., we need not address their fourth, sixth, eighth, tenth, and twelfth issues, all of which complain about the judgment against NDemand, Inc. *See* TEX. R. APP. P. 47.1.

## TESKE'S CLAIMS AGAINST DOYLE

In part of their first issue, Doyle and NDemand, Inc. assert that Teske's claim of breach of fiduciary duty is barred by the applicable statute of limitations. In his fifth issue, Doyle asserts that there is legally and factually insufficient evidence that he breached a fiduciary duty to Teske. Doyle's main contention, as it relates to this claim, is that he did not have a fiduciary relationship with Teske.

### Limitations

Statutes of limitations prevent the litigation of stale claims by

> afford[ing] plaintiffs what the legislature deems a reasonable time to present their claims and protect[ing] defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise.

*S.V. v. R.V.*, 933 S.W.2d 1, 3 (Tex. 1996). The applicable statute of limitations for breach of fiduciary duty is not later than four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5) (Vernon 2002). However, the discovery rule defers the accrual of certain causes of action until the plaintiff knew or through the exercise of reasonable diligence should have discovered the wrong. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). The discovery rule applies in "those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* at 456. To be inherently undiscoverable, an injury, by its nature, must be unlikely to be discovered within the limitations period despite the exercise of due diligence. *G. Prop. Mgmt., Ltd. v. Multivest Fin. Servs. of Tex., Inc.*, 219 S.W.3d 37, 48 (Tex. App.–San Antonio 2006, no pet.). When dealing with a fiduciary, the nature of the injury is presumed to be inherently

7

undiscoverable. *Id*. However, a plaintiff must still exercise diligence and has some responsibility to ascertain when an injury occurs. *Id*.

Here, Doyle took Teske's check for $25,000.00 and placed it in his personal checking account in January 2000. The business credit card was issued in January 2000 and Doyle used it for personal purchases. Teske filed his original petition on January 4, 2007. Doyle argues that Teske knew of his legal injury in the summer of 2002. Doyle further asserts that Teske should have known by December 2002 at the latest because Teske then became aware that Doyle was not paying NDemand Technologies' credit card bill. However, Teske did not immediately realize that Doyle had taken advantage of the situation. Of course, Teske was aware that Doyle had not issued any stock to him or repaid the $25,000.00. Teske was never given a balance sheet or income and expense records showing the condition of the company. By the fall of 2002, Teske knew that the business was failing. Teske testified that he learned in January 2003 that Doyle had not been making payments on the credit card account. Teske also testified that he did not request the detailed billing for the credit card until around the time of his final payment, August 13, 2004. The bank provided him with the information approximately two weeks later. Thus, Teske determined in August 2004, after he received those statements, that Doyle had used the credit card for personal purchases. Teske did not know that Doyle had deposited the $25,000.00 check into Doyle's personal account until even later. Accordingly, the trial court's implied findings that Teske failed to learn of his legal injury until after January 2003, less than four years from the time that suit was filed, and that Teske exercised reasonable diligence in discovering Doyle's wrongful conduct are supported by the evidence. *See Altai, Inc.*, 918 S.W.2d at 455-56. We overrule that portion of the first issue asserting that Teske's breach of fiduciary duty claim is barred by limitations.

In their fourteenth issue, Doyle and NDemand, Inc. assert that Teske waived his right to pursue his claims by not timely filing them. Assuming this issue refers to something other than the limitations argument asserted in issue one, we can locate no separate argument in their brief addressing their fourteenth issue. Thus, issue fourteen is waived for improper briefing. *See* TEX. R. APP. P. 38.1(i). We overrule Doyle and NDemand, Inc.'s fourteenth issue.

**Breach of Fiduciary Duty**

8

Doyle argues there was no fiduciary relationship. Alternatively, he argues that "if anyone was the fiduciary it was [Teske]" because he was older and a more experienced businessman. Finally, he argues that, if there was a fiduciary relationship, Doyle did not breach it.

There are formal fiduciary relationships, which arise as a matter of law in certain formal relationships and includes relationships between attorneys and clients, partners, and joint venturers. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Additionally, there are informal fiduciary relationships. Courts impose fiduciary duties on some relationships because of their special nature or because a person "occupies a position of peculiar confidence towards another." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). The term "fiduciary" refers to integrity and contemplates fair dealing and good faith as the basis of the transaction. *Id*. Thus, an informal fiduciary duty may arise from a moral, social, domestic, or purely personal relationship of trust and confidence. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) (per curiam). To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit. *Id*. The elements of breach of a fiduciary duty claim are (1) a fiduciary relationship exists between the plaintiff and defendant, (2) breach of the fiduciary duty by the defendant, and (3) the defendant's breach results in injury to the plaintiff or benefit to the defendant. *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.–Dallas 2010, no pet.).

Doyle and Teske agreed to form a corporation. However, no steps were ever taken to do so. Doyle ran the company as his sole proprietorship and treated Teske as an investor. However, even if we assume there was no formal relationship from which a formal fiduciary relationship would arise, the record supports a finding of an informal fiduciary relationship.

Doyle was still a teenager in 1996 when he started helping Teske and his wife with their home computer problems. Initially, Doyle did the work as an employee of a computer company, but by 1998 he did the work "on the side" and Teske paid him directly, in cash. Doyle testified that, after he moved to Houston, he would visit Teske once or twice a month from 1998 through 2004 and work on Teske's computers. Teske would give him $50.00 or $100.00 each time. Doyle testified that "[t]here was never any expectation of, during that time, of payment for services rendered." He did it because he "liked the guy" and he thought Teske was a "good guy."

9

Teske, who was eighty years old at the time of trial in 2009, testified that every time Doyle came to his house, "he walked away with pockets full of money." The last time Doyle was at Teske's house, Teske gave him $750.00. Teske and his wife thought of Doyle as their son. Teske said that Doyle was a good friend and he had trusted him. He was really disappointed and mad because they had taken Doyle in like a son. Teske explained that he did not "cover every step" because he thought of Doyle as a son whom he trusted as a close friend.

A special relationship of trust and confidence existed before January 2000. Thus, the nature of the relationship between the parties was that of fiduciaries. *See Meyer*, 167 S.W.3d at 331. Doyle argues that only Teske could be the fiduciary because he was older and a more experienced businessman. However, both business associates can owe each other the duty of a fiduciary. Although Teske was older, he was not more experienced in the computer repair field, which was the nature of the business. Also, according to Teske, he was to provide the money and Doyle was to provide the expertise and work. While Doyle maintains that it was Teske's obligation to incorporate the business, Teske testified that it was Doyle's obligation. The trial court was free to believe Teske's testimony and disbelieve Doyle's. *City of Keller*, 168 S.W.3d at 819. Teske trusted Doyle to set up the corporation, to run the corporation, and to handle the start up money and credit card for the corporation. Doyle never incorporated NDemand Technologies, but instead ran the business as his sole proprietorship. He breached his fiduciary duty to Teske by running the business as his sole proprietorship to the exclusion of Teske, including using funds and a credit card that Teske designated for their business for his personal benefit. The trial court's implied findings that Doyle was a fiduciary of Teske and that Doyle breached his fiduciary duty to Teske are supported by the evidence. *See id*. at 827; *Cain*, 709 S.W.2d at 176. Because the evidence is legally and factually sufficient to support the trial court's determination that Doyle breached his fiduciary duty to Teske, we overrule Doyle's fifth issue.

The trial court's judgment must be affirmed if it can be upheld on any legal theory supported by the evidence. *In re W.E.R.*, 669 S.W.2d at 717. We have determined that the evidence supports a finding of breach of fiduciary duty, and the claim is not barred by limitations; thus, the judgment should stand. Accordingly, we need not address the remainder of Doyle and NDemand, Inc.'s first issue, in which they assert that all other claims against them are barred by limitations, or the third, seventh, ninth, and eleventh issues in which Doyle contends

10

the trial court erred in rendering judgment in favor of Teske on his remaining causes of action. *See* TEX. R. APP. P. 47.1.

## QUANTUM MERUIT AND ACCORD AND SATISFACTION

In his thirteenth issue, Doyle asserts that the value of Doyle's services to Teske exceeded the amounts claimed to be owed to Teske and thus Doyle should not have to repay Teske. Doyle requests this court render a decision for him based on quantum meruit for the value of his services or, at a minimum, consider the value of his services as accord and satisfaction for the money invested by Teske. He asserts he is entitled to a full offset for Teske's claims.

The burden is on Doyle to establish the affirmative defense of accord and satisfaction. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979). This defense rests on a new contract in which the parties agree to discharge an existing obligation in a manner otherwise than originally agreed. *Id*. The tender of the alternate satisfaction is upon the condition that the acceptance will constitute a discharge of the underlying obligation. *Id*. An "accord" is in essence a contract or agreement, and "accord and satisfaction" is founded on and dependent on, and results from a contract, express or implied, between the parties. *Id*.

Doyle asserts that he spent a total of $76,500.00 worth of uncompensated time working on Teske's personal computers. He argues that his "services arise to the level of accord and satisfaction." He does not identify evidence of an "accord," that is, a new agreement between him and Teske in which they agree to discharge the original obligations by application of Doyle's work on Teske's personal computers. Neither has our review of the record uncovered such an agreement. Doyle has not met his burden to establish the affirmative defense of accord and satisfaction. *Id*.

Quantum meruit is an equitable remedy "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Generally, a party recovers under quantum meruit when no express contract covers the services rendered. *Id*. The elements of quantum meruit are (1) valuable services were rendered or materials furnished, (2) for the person sought to be charged, (3) the services or materials were accepted, used, and enjoyed by the person sought to be charged, (4) under such circumstances that reasonably notified the person sought to be charged that the plaintiff expected to be paid. *Id*.

11

Here, Doyle testified that he provided computer repair work for Teske without the expectation of payment for services rendered. He also testified that Teske gave him money when he worked on Teske's computers. Teske testified that he paid Doyle for the work performed. Thus, the evidence does not support Doyle's assertion that he is entitled to recover under the theory of quantum meruit. *See id*. We overrule Doyle's thirteenth issue.

### AFFIRMATIVE RELIEF SOUGHT BY DOYLE AND NDEMAND, INC.

Although not listed as a separate issue, Doyle and NDemand, Inc., also assert that the trial court erred when it did not award them damages on their counterclaim alleging that Teske filed a frivolous lawsuit. A brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). Doyle and NDemand, Inc., failed to cite any authorities or any portion of the record in support of their claim for affirmative relief and have therefore waived this complaint. *See Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 189 (Tex. App.–Houston [1st Dist.] 2005, no pet.). Therefore, to the extent that they seek appellate review of the trial court's determination that Teske's lawsuit was not frivolous, we overrule Doyle and NDemand, Inc.'s issue.

### DISPOSITION

We *affirm* the trial court's judgment in favor of Teske against Doyle. We *reverse* the trial court's judgment in favor of Teske against NDemand, Inc., and *render* judgment that Teske take nothing on his claims against NDemand, Inc.

**BRIAN HOYLE**
Justice

Opinion delivered March 31, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

12